NATALIE M. PRESBREY, Appellant, *v.* OLIVER M. PRESBREY et al., Respondents.

First Department, November 5, 1958.

*Daniel F. Scanlan* for appellant.

*Philip L. Leit* for respondents.

BREITEL, J. A first wife sues her husband and the woman he has remarried on the ground that the divorce the husband obtained from the first wife in Mexico was a nullity and that the remarriage to the second wife was likewise a nullity. Plaintiff wife appeals from dismissal on motion of her second amended complaint for legal insufficiency and on the ground that there is existing a prior final judgment which disposes of the merits raised by the pleading.

The complaint contains two causes of action. One is for declaratory judgment with respect to the nullity of the divorce and the remarriage; and the other is for annulment of the remarriage. The complaint also prays for incidental injunctive relief.

Plaintiff wife and defendant Presbrey were married in 1930. On March 12, 1952 she started a separation action on the ground of abandonment. The couple entered into a separation agreement on July 3, 1952, and, thereafter, on November 3, 1952 a judgment of separation was rendered in favor of plaintiff wife in the Supreme Court, New York County, which incorporated the terms of the separation agreement. On June 13, 1952, prior to the separation agreement and the entry of a judgment of separation, defendant Presbrey procured a Mexican divorce from plaintiff. The wife alleges that she had no knowledge of this proceeding and, admittedly, she was never served nor did she appear. Defendants concede that the Mexican divorce is without validity. On June 18, 1952 defendant Presbrey married defendant Martha Rountree. This too was still before the judgment of separation — indeed, even before the execution of the separation agreement.

Special Term, relying primarily on *Garvin* v. *Garvin* (306 N. Y. 118), held that the action would not lie and dismissed the entire complaint.

The first wife makes no serious attack upon the order insofar as it dismissed the cause of action for a declaratory judgment. Controlling is the *Garvin* case (*supra*). There a first wife sued her husband and his second wife, and asked for a declaratory

judgment in the usual form with incidental injunctive relief. As in this case, the first wife in the *Garvin* case had obtained a separation judgment subsequent to the allegedly null Virgin Islands divorce and the null remarriage. As will be seen, it is significant that the remarriage, as here, was a void one and not a voidable one. Her pleading was dismissed on motion on the ground that a declaratory judgment was unnecessary, the marital status of the plaintiff wife having been fully and conclusively determined by the prior separation judgment.

Accordingly, that branch of the motion on which the first cause of action was dismissed was properly granted.

With respect to the second cause of action seeking the annulment of the remarriage to the second wife, plaintiff wife in this case invokes section 1134 of the Civil Practice Act which entitles a first spouse to obtain the annulment of a void remarriage to another. In this connection plaintiff wife asserts that a court is without discretion to decline an annulment otherwise authorized by the statute.

Section 1134, upon which plaintiff wife relies, reads as follows: '' An action to annul a marriage upon the ground that the former husband or wife of one of the parties was living, the former marriage being in force, may be maintained by either of the parties during the lifetime of the other, or by the former husband or wife.''

The question is whether the statute mandates upon the court entertainment of the action and, in a *pro forma* case, the granting of the relief demanded, even though the wife's status has been fully determined in the prior separation action, and the prior Mexican divorce and prior remarriage are, of necessity, void — void by implication of the judicial declaration in the separation judgment.

The order insofar as it dismissed the second cause of action was also properly granted and the order, therefore, should be affirmed in all respects.

There are two basic grounds on which the cause of action for annulment falls. Both of these are discoverable from the pleading in accordance with the precedents that have now become well established in this field. Nor would a trial develop any other facts or factors which would serve to distinguish this case from the applicable precedents. In fact, it appears also that there are no disputed material facts. Defendants concede *arguendo* and in truth the allegations of the complaint, except only as to plaintiff wife's knowledge of the husband's divorce and remarriage prior to the separation judgment.

The first ground is that the *res judicata* effect of the first wife's separation judgment precludes the granting of any relief such at that sought in this action. The second ground is that there is some discretion reposed in the court in entertaining actions under section 1134 of the Civil Practice Act. This is so even where the action is only between the parties to the marriage attacked as null. It is so in even greater degree when the action is brought by a first spouse to annul the marriage between defendant spouse and another. Thus, in the exercise of discretion the court will not render an unnecessary judgment:

It is ancient law that a judgment in rem is *res judicata* as to all the world with regard to the *res* or status that is determined therein. In a matrimonial action the condition of marriage or nonmarriage is involved. An essential issue is, therefore, one of status — or, put another way, there is a marital *res* subject to in rem jurisdiction. As a consequence, in ordinary circumstances a judgment determining marital status is binding on the whole world, and it is not confined in effect to the immediate parties to the action in which the judgment determining status was rendered. (*Matter of Holmes,* 291 N. Y. 261; *Urquhart* v. *Urquhart,* 272 App. Div. 60, affd. 297 N. Y. 689; Restatement, Judgments, § 74, particularly *Comment a*; 50 C. J. S., Judgments, § 910, subd. c, par. (3); 30A Am. Jur., Judgments, § 136; *Rediker* v. *Rediker,* 35 Cal. 2d 796, 22 P. 2d 1 [TRAYNOR, J.]; *Brigham* v. *Fayerweather,* 140 Mass. 411, 5 N. E. 265 [HOLMES, J.]; Ann. 20 A. L. R. 2d 1163 *et seq.*; cf. Ann. 87 A. L. R. 203 *et seq.*) For reasons that are readily apparent, and which are exampled in the *Holmes* and *Rediker* cases (*supra*), a divorce judgment determines only status of nonmarriage from the time of judgment but is not determinative of status prior to judgment. This, of course, presents no problem in applying *res judicata* to a separation judgment which rests upon a foundation of a marriage subsisting before and after the separation judgment. (*Garvin* v. *Garvin,* 306 N. Y. 118, *supra*; *Statter* v. *Statter,* 2 N Y 2d 668; *Cherubino* v. *Cherubino,* 284 App. Div. 731.)

It therefore follows that the separation judgment obtained by plaintiff wife is determinative as to the whole world, that is, as to third parties. That separation judgment subsists not only as a judicial declaration between the parties to the separation action, but also as to any others, such as the second wife whose marriage to the husband antedates the judgment.

Moreover, the second wife is not a principal party defendant so much as she is an indispensable party codefendant to the action to annul the marriage by the defendant Presbrey with her.

(*Anderson* v. *Hicks,* 150 App. Div. 289; *Adams* v. *Vulovich,* 191 Misc. 464; *Feldman* v. *Intrator,* 175 Misc. 632; *Johnson* v. *Johnson,* 13 Misc 2d 891). Since the principal defendant, the twice-marrying husband, is already bound by the separation judgment, no further relief is necessary as to him and, derivatively, the codefendant status of the second wife fails of purpose. On this analysis, the second amended complaint fails in both its causes of action.

However, because plaintiff wife places the emphasis she does on section 1134, and argues that its effect is mandatory on the court, further treatment of the question is required.

Section 1134 is the successor statute to several predecessors, the first of which was first enacted in 1824. (2 Rev. Stat. of N. Y. [1st ed.], part II, ch. VIII, art. 2, § 22 [p. 142].)\* It was part of a comprehensive statute (*ibid,* § 20 *et seq.*) which was enacted, among other things, to codify the holding of Chancellor KENT that chancery had jurisdiction to entertain an action to annul a voidable marriage on grounds of which equity would take cognizance in the case of voidable contracts generally. (*Wightman* v. *Wightman,* 4 Johns. Ch. 343.) At that time there were no statutes in this State authorizing actions for annulment. In England such actions had lain in the ecclesiastical courts. But here, there were neither such courts nor were there statutory substitutes provided for the secular courts.

The new comprehensive statute was also designed to elaborate upon the dicta of the Chancellor in suggesting that certain kinds of void marriages would also be the subject of chancery relief as a matter of inherent jurisdiction. The validity of the dicta had been questioned. (*Burtis* v. *Burtis,* 1 Hopk. Ch. 557; 3 Rev. Stat. of N. Y. [2d ed.], 658, 659–660; see, also, *ibid.* 661.) It would appear, therefore, that the statutory remedy provided by section 1134 is not, historically, of exclusively legislative origin. It had its roots in the exercise of chancery discretion. The statute, moreover, was framed, in part at least, with reference to that inherent chancery jurisdiction and the discretionary power which is its vital principle.

Be that as it may, the Court of Appeals in *Stokes* v. *Stokes* (198 N. Y. 301), although holding on the facts involved in that case that the lower courts had erroneously exercised jurisdiction

---

\* The statute then enacted read as follows: "Where a marriage is sought to be annulled, on the ground that a former husband or wife of one of the parties, was living, it may be declared void on the application of either of the parties, during the life time of the other, or upon the application of such former husband or wife." Insofar as relevant, it is substantially identical with the present statute.

to decline an annulment, stated that in a proper case a court of equity would refuse to grant an annulment sought under one of the predecessor statutes to section 1134 (Code Civ. Pro., § 1745). Shortly before the decision in the *Stokes* case the Appellate Division in this department had held that the predecessor statute did not deprive the court of its equity discretion in entertaining actions brought under it. (*Berry* v. *Berry,* 130 App. Div. 53.) Notably, as here, the *Stokes* and *Berry* cases involved void and not voidable remarriages. Hence, the question of discretion does not turn on whether the subject of the action is a void or voidable marriage. It is true, however, that thereafter this court in *Brown* v. *Brown* (153 App. Div. 645), as a result of the holding in the *Stokes* case (*supra*) felt itself constrained to exclude the doctrine of equitable estoppel based on unclean hands.

For some time this particular judicial self-limitation on the exercise of discretion as laid down in the *Brown* case was questioned. (*Slater* v. *Kenny,* 176 Misc. 690, revd. on other grounds 265 App. Div. 963; *Bays* v. *Bays,* 105 Misc. 492; *Tiedemann* v. *Tiedemann,* 94 Misc. 449.) This accounts for the variation in consistency among the collected cases. (See, e.g., *Zuckert* v. *Zuckert,* 13 Misc 2d 893, cited by plaintiff-wife in this case.)

This particular limitation, however, upon the exercise of discretion under the predecessor statute and section 1134 has since evidently become the settled prevailing law. (E.g., *Landsman* v. *Landsman,* 302 N. Y. 45; *Sophian* v. *Sophian,* 279 App. Div. 651; *Marion* v. *Marion,* 277 App. Div. 1115; *Villafana* v. *Villafana,* 278 App. Div. 697, reargument of 275 App. Div. 810.) But the limitation has been one self-imposed by the courts, and has never been extended into a rejection of all equitable discretion or the exclusion of every species of equitable estoppel (cf., e.g., *Krause* v. *Krause,* 282 N. Y. 355; *Carbulon* v. *Carbulon,* 293 N. Y. 375).*

No appellate court has ever held that an action brought under section 1134, or its predecessor statutes, deprives the court of all discretion. The fact is that some discretion has been repeatedly and avowedly exercised, especially in cases in which the action is brought by the first spouse to annul a remarriage by the defendant spouse to another. (*Packer* v. *Packer,* 6 A D 2d 464, decided simultaneously with this case; *Schneider* v. *Schneider,*

---

* For a painstaking analysis of the doctrine of equitable estoppel in matrimonial cases, including annulments, and the variant lines that have been evolved, see Hofstadter and Richter, Estoppel in New York Matrimonial Litigation (N. Y. L. J., Feb. 10, 11, 13, 1958, pp. 4, 4, 4).

281 App. Div. 250.)* Most frequently, the comment in *Stokes* v. *Stokes* (198 N. Y. 301, *supra*) is made the basis for such exercise of discretion. (See, e.g., *Shonfeld* v. *Shonfeld*, 260 N. Y. 477; *Graham* v. *Graham*, 211 App. Div. 580; *Reed* v. *Reed*, 195 App. Div. 531, affg. 106 Misc. 85; *Slater* v. *Kenny*, 176 Misc. 690, revd. on other grounds 265 App. Div. 963, *supra*; *Bamberger* v. *Bamberger*, 128 Misc. 1; *Magee* v. *Nealon*, 108 Misc. 396; *Bays* v. *Bays*, 105 Misc. 492, 502 *et seq.*, *supra*; *Tiedemann* v. *Tiedemann*, 94 Misc. 449, *supra*; *Johannessen* v. *Johannessen*, 70 Misc. 361, 366 *et seq.*; *Tober* v. *Tober*, 157 Misc. 551; *Bonney* v. *Bonney*, 13 Misc 2d 866; but cf., in accord with *Landsman* v. *Landsman*, 302 N. Y. 45, *supra*: *Anonymous* v. *Anonymous*, 186 Misc. 772; *Gough* v. *Gough*, 13 Misc 2d 894.) The texts would seem to be in accord (3 Nelson, Divorce and Annulment [2d ed.], §§ 31.45, 31.46; 55 C. J. S., Marriage, §§ 49, 50, 51).

Before concluding the discussion on this aspect of the case it is also noteworthy that a cause of action which seeks an annulment of a marriage between a first spouse and another party consists of the same allegations, in substance, as a cause of action which seeks a declaratory judgment with respect to the same set of facts. Indeed, an action to annul such a third-party marriage under section 1134 is no more than a form of declaratory judgment, specifically authorized by the statute.

The parallel is evident, too, in the pleading in this case. The allegations in each cause of action are substantially the same.** It is only the reliance on the statute which is supposed to distinguish the second cause of action from the facts and the relief sought in the first cause of action. This reliance on the statute nowhere appears from the face of the pleading, as, of course, it need not.

---

* In the *Schneider* case this court reversed Special Term's denial of an annulment to plaintiff husband. It did so because of Special Term's mistaken reliance on the dismissal of a prior action, also brought by the husband, which sought not an annulment of the second marriage but a declaratory judgment affirming the subsisting validity of the first marriage. In doing so, this court referred to its discretion under section 1134, and proceeded to exercise it in favor of the plaintiff husband. But notably, the second action for annulment, unlike the unsuccessful first action for a declaratory judgment as to the subsistence of the first marriage, was to annul the wife's second marriage to her second husband. Moreover, the court emphasized that in the second action for an annulment, unlike the first action for a declaratory judgment, there was absolutely no defense. Indeed, there was none — either of estoppel, no longer available under the rule in *Stokes* v. *Stokes* (*supra*) or, as here, of prior separation judgment.

** It is interesting that the same situation recurs in the pleading in *Packer* v. *Packer* (6 A D 2d 464, *supra*), decided simultaneously with this case.

In essence, then, there is no factual difference between a cause of action to declare a third-party marriage a nullity from one for " an annulment " brought under the statute. This is not a tenuous parallel, or one accidental to this case. When one examines the pleading in *Garvin* v. *Garvin* (306 N. Y. 118, *supra*) the substantive content of the pleading is exactly the same, *mutatis mutandis*, as the allegations in this case. And, of course, in that case there was no pretense that the action was other than one for a declaratory judgment.

The *Garvin* case, then, disposes not only of the first cause of action but also of the second cause of action. As already observed, there is no difference in the allegations between them. Analytically, either cause of action, if successful, would result in a judgment declaring the third-party marriage a nullity. The third-party marriage is a nullity without judicial action, which distinguishes it from a voidable marriage. To " annul " a void marriage is to declare it null — just as to declare a void marriage null is to " annul " it. If the remedy is unnecessary in the one case because of a subsisting separation judgment it is unnecessary in the other case.

Hence, so long as the court has some discretion under section 1134 it is not required to nor should it render an unnecessary judgment, with the incidental consequence of a multiplicity of actions and the duplication of allowed counsel fees and other litigation expense.

Accordingly, the order and judgment dismissing the second amended complaint should be affirmed, on the law and in the exercise of discretion, with costs to defendants-respondents.

VALENTE, J. (dissenting). We agree with the court that the first cause of action of the second amended complaint, wherein plaintiff seeks a declaratory judgment and an injunction, was properly dismissed. Having obtained a judgment of separation in this State against her husband (after he had secured a Mexican divorce), plaintiff sufficiently established her marital status. There would be no useful purpose served in a further declaration. (*Garvin* v. *Garvin*, 306 N. Y. 118.)

But we cannot subscribe to the view that the cause of action for an annulment of the husband's remarriage must necessarily fall with the dismissal of the declaratory judgment cause. The court now holds that *Garvin* disposes of both causes of action since in that case " the substantive content of the pleading is exactly the same, *mutatis mutandis*, as the allegations in this case ". However, the fact is that in *Garvin* the complaint contained only one cause of action (which was for declaratory

judgment) whereas here the pleading contains two causes, and asks for separate relief as to each cause.

Expressing the view that the second marriage is a nullity without judicial action, the majority concludes that a judgment under section 1134 of the Civil Practice Act is unnecessary and that discretion resides in the court to dismiss the annulment action for the same reason that the cause for declaratory judgment is eliminated.

In reaching that result, the court has made, what we conceive to be, two impermissible assumptions: (1) that an action to annul a void second marriage brought by a former spouse is indistinguishable from an action for declaratory judgment, and (2) that the same discretionary considerations for a dismissal of a declaratory judgment suit may be applied to the cause of action for annulment. We dissent from both these views.

An action for an annulment of a marriage under section 1134 is not the same as an action for declaratory judgment under section 473 of the Civil Practice Act. As the majority opinion indicates, section 1134 is a successor statute, without material change, to one first enacted in 1824. Then as now, the statute permitted an action to annul a marriage — on the ground that a former husband or wife of one of the parties was living — to be brought upon the application of the former husband or wife. Hence, the action for annulment long antedated *eo nomine* actions for declaratory judgment which are also creatures of a statute. (See *Lowe* v. *Lowe,* 265 N. Y. 197, 202.)

The action for declaratory judgment provided for in section 473 of the Civil Practice Act did not supplant pre-existing forms of actions. Its purpose was to supplement and give relief where other forms of action would not suffice. In *Newburger* v. *Lubell* (257 N. Y. 383, 386), CARDOZO, Ch. J., said: "A suit for a declaratory judgment is a discretionary remedy (Civ. Prac. Act, § 473), which may be withheld if existing forms of action are reasonably adequate (Rules Civ. Prac. rule 212)."

If, in certain cases, there may be similarities in demands for relief with actions for declaratory judgment, that does not make the actions identical for all purposes. In point of fact, various sections of article 67 of the Civil Practice Act specifically refer to actions to annul void marriages as actions "declaring the nullity" of void marriages (§§ 1132, 1135, 1140, 1140-a); but at the same time indiscriminately designate the same actions as ones "to annul a marriage" (§§ 1134, 1143, 1146).

The requirements for maintaining an action for declaratory judgment and one for annulment are different (see Civ. Prac. Act, § 1165-a). The writer said in a concurring opinion in

*Gray-Lewis* v. *Gray-Lewis* (5 A D 2d 238, 241): "In effect, a suit by a former husband or wife to annul a subsequent marriage of his or her spouse partakes of the nature of an action for declaratory judgment — seeking a declaration of the invalidity of the later marriage. Hence, the jurisdictional prerequisites for maintaining an action for declaratory judgment would be equally applicable to this type of action to annul a marriage." However, recognition of the points of similarity between the two types of action does not import identity for all purposes. Resemblance does not constitute equivalence.

That the two types of action have not coalesced was particularly recognized in *Baumann* v. *Baumann* (222 App. Div. 460) where it was conversely urged that an action for declaratory judgment was barred because of the existence of a matrimonial remedy. This court (per MERRELL, J.) held (p. 464): "We do not think the provisions of articles 67, 68, 69 and 70 of the Civil Practice Act exclude the present form of action. We think the action for declaratory judgment for the relief sought by plaintiff is permissible, and that the provisions of the articles of the Civil Practice Act mentioned at most furnish alternative remedies ".

Particularly apt is our decision in *Schneider* v. *Schneider* (281 App. Div. 250) which the majority of the court now cites in support of its holding that discretion is repeatedly and avowedly exercised in actions brought by the first spouse to annul a remarriage by the defendant spouse to another. In that case an annulment was ordered by this court, reversing a denial of such relief by Special Term. In *Schneider* the husband had originally commenced an action for declaratory judgment. After trial, the complaint was dismissed on the ground that in the circumstances of the case " the discretionary jurisdiction should not be exercised " and " that plaintiff is lacking in the bona fides which plaintiffs on the equity side must show to recover ".

The husband then commenced an action for annulment of the second marriage under section 1134 of the Civil Practice Act. Special Term dismissed the complaint, after trial, finding elements of inequitable conduct and an attempt to circumvent the effect of the dismissal of the prior declaratory judgment action. In reversing the dismissal and granting the annulment, this court found not only that there was an absence of inequitable conduct but also that the dismissal of the declaratory judgment action did not foreclose a successful suit to annul the second marriage.

*Schneider* v. *Schneider* (*supra*), then, is a clear holding that the two types of suit may be maintained independently, and that

a dismissal of the action for declaratory judgment for discretionary reasons provided for under rule 212 of the Rules of Civil Practice does not compel, or warrant, a dismissal of a suit to declare the nullity of the second marriage.

Thus, in *Baumann* v. *Baumann* (222 App. Div. 460, *supra*) it was demonstrated that the availability of an action for annulment under section 1134 of the Civil Practice Act does not preclude an action for declaratory judgment. And in *Schneider* v. *Schneider* (*supra*) it was held that a dismissal of an antecedent action for declaratory judgment will not bar a subsequent action for annulment. Moreover, that the two actions are not mutually exclusive, but may coexist, is borne out by *Fondiller* v. *Fondiller* (182 Misc. 628) where the court granted both declaratory judgment and an annulment of the second marriage.

The second unwarranted assumption which underlies the majority's decision to dismiss the annulment action is that the same discretionary power resides in a court to dismiss an action for annulment as it may exercise in an action for declaratory judgment. In arriving at that conclusion, the court has failed to distinguish the statutory discretion vested in courts with respect to declaratory judgment actions, and the discretion which is inherent in a court of equity as to the granting or refusing of equitable relief.

Section 473 of the Civil Practice Act which vested power in the Supreme Court to entertain actions for declaratory judgment also provided for the promulgation of rules to effectuate its purposes. Accordingly, rule 212 of the Rules of Civil Practice directs, " If, in the opinion of the court, the parties should be left to relief by existing forms of actions, or for other reasons, it may decline to pronounce a declaratory judgment, stating the grounds on which its discretion is so exercised ". Thus the discretion given by rule 212 is one to grant or refuse declaratory relief, irrespective of the merits of the declaratory relief prayed for. It was held in *MacCallum* v. *MacCallum* (2 A D 2d 193, 194): " The question of whether to assume jurisdiction in declaratory judgment actions should be decided at the threshold of the action and is properly determined on a motion to dismiss the complaint. (*Hagaman Mfg. Co.* v. *Rough-Wear Clothing Co.*, 284 App. Div. 189; *Latham & Co.* v. *Mayflower Ind.*, 278 App. Div. 90.) " (See, also, *Guibord* v. *Guibord*, 2 A D 2d 34.)

The statutory discretion to refuse to entertain an action for declaratory judgment is obviously different from the discretion inherent in a court of equity in awarding equitable remedies. The exercise of the latter discretion depends upon the factual circumstances of each case. Even then there are limitations.

In *Evangelical Lutheran Church* v. *Sahlem* (254 N. Y. 161, 167) CARDOZO, Chief Judge, said: " In the award of equitable remedies there is often an element of discretion, but never a discretion that is absolute or arbitrary. In equity as at law there are sign-posts for the traveler. ' Discretion  *  *  *  '' must be regu-lated upon grounds that will make it judicial '' '.''

Though equitable discretion may be broad " it, nevertheless, is governed in the administration of relief by settled principles and the action of the court is dependent not upon its pleasure, but upon the facts of the case and the condition of the parties." (*Rosenberg* v. *Haggerty,* 189 N. Y. 481, 484.)

There is no discretion in equity to refuse to take jurisdiction of an annulment action. The majority opinion discusses the vicissitudes in our courts of the doctrine of estoppel and inequit-able conduct in annulment actions, culminating in *Landsman* v. *Landsman* (302 N. Y. 45). Unquestionably *Landsman* seriously limited, if it did not destroy, the possibility of invoking estoppel or unclean hands as a defense in an annulment suit involving a void marriage. But even assuming, as the majority opinion does, that there has been no " rejection of all equitable discre-tion or the exclusion of every species of equitable estoppel ", the cause of action for annulment in the instant suit presents no case for invoking such residual discretion. In *Schneider* v. *Schneider* (281 App. Div. 250, 251, *supra*) this court (paraphras-ing the language in *Stokes* v. *Stokes,* 198 N. Y. 301), said: " In extreme cases the position of the person seeking relief of the kind here sought may be so inequitable that a court of equity will refuse to interfere ".

We can see no basis for the determination of the majority, upon the amended complaint and affidavits, that plaintiff's con-duct is inequitable and falls within the ambit of an " extreme " case.* The only reason now advanced is that the annulment is unnecessary in view of the subsisting separation judgment obtained by plaintiff against the defendant husband. That hardly constitutes a species of inequitable conduct. We grant that an inference may be drawn that the second marriage is void in view of the recognition of the first marriage by the separation decree.**

---

*At this posture of the case, there should, in any event, be no indulgence in a conclusion as to inequities or estoppel. Those considerations are matters to be pleaded as affirmative defenses and developed at a trial.

**But see *Krause* v. *Krause* (282 N. Y. 355, 360) where the court, in a separation action by a second wife, said: " Nothing in this decision should be taken to mean that because the defendant may not in these proceedings avail himself of the invalidity of his Nevada decree he is not the husband of his first wife."

But the action to declare the nullity of a void marriage is statutory and unconditionally granted by section 1132 of the Civil Practice Act. Nothing in the statute, nor in the cases, imposes a condition that the decree be necessary or useful. Nor does the grant of relief in such cases depend upon the degree of perceptibility of the invalidity of the marriage assailed. Even though a marriage may be clearly void, a party may obtain a decree of the court declaring the same. The qualification which this court now attempts to impose cannot be sustained on statutory or equitable principles.

The separation decree establishes an essential element in the action by the former spouse to annul the subsequent marriage, i.e., that plaintiff is still the wife of defendant Presbrey. Application of the doctrine of *res judicata* should not be permitted to transmute this assistance into an impediment barring plaintiff's action.

We would therefore modify the order by denying the motion to dismiss the second cause of action seeking an annulment of the second marriage, and otherwise affirm.

BOTEIN, P. J., and STEVENS, J., concur with BREITEL, J.; VALENTE, J., dissents in opinion, in which M. M. FRANK, J., concurs.

Order and judgment affirmed, on the law and in the exercise of discretion, with costs to defendants-respondents.